United States Soccer Federation, Inc. Number 25, 1-2-2-5. Time, time. Hold on one second. May it please the Court, good morning. My name is Jeffrey Kessler, and I am from Winston and Strawdon Council for the Appellant, the North American Soccer League. Your Honor, I'd like to focus on two aspects of our appeal. I want to talk about what we believe was the erroneous requirement that a plaintiff had to prove the definition of relevant markets for its antitrust claims, despite the fact that there are a number of alternative means under the governing law that it should have been permitted to present to the jury. And I want to talk about the significance of the Cho decision regarding that. And second, I want to talk about the fact that Count 1, which was dismissed on summary judgment, was improperly dismissed, never presented to the jury, and independently provides a basis for reversal below. So I'm going to first start with the issue of requiring a relevant market. And then I'm going to respond to Mr. Kessler and then I'm going to move the case forward to the case law of the court,   And I'm wondering, would you focus on waiver?  that when we argued that we didn't need a relevant market, the court rejected that argument for Section 1. And then he said for the Section 2 claims, the exact same analysis applied. So the issue was preserved. Second, the issue was also preserved at the request for jury instructions. We specifically requested instructions to allow us to prove our case through evidence of direct effects regarding that. And that was rejected in the jury instructions. And then we presented it again in a Rule 59 motion for a new trial. So in three different ways, this argument was preserved. Finally, Your Honor, even if it was thought that there was a forfeiture, because there could be no waiver, because there was no willing relinquishment of a right, if it was a forfeiture, this is a clear and plain error, so it will be considered anyway as a grounds for reversal. So how do you get around your justification for not saying anything about the verdict sheets? Well, Your Honor, by the time we got to the verdict form, okay, we had already gone through the jury instructions where the argument had been rejected. It had already been rejected at the summary judgment level. And frankly, Judge Gonzalez made it very clear to us he didn't want us to keep raising the same arguments again. He said, you know, you've raised the arguments, I rejected it, just focus on where we are now. And so when we got to the verdict form issue, the issue that was presented was simply if there was going to be a relevant market finding, which was the first question of the verdict form, did it have to be unanimous on the same market? And on that issue, we presented opposition. Well, if that's required, we agreed that the jury had to agree on the same market. There was no way that we discussed there that we were giving up the arguments we had first raised on summary judgment at loss, hadn't raised again in the jury instructions. And so I don't see how that could be a waiver. So your position is that you had no obligation to comment on or object to jury instructions that quite clearly contemplated a relevant market as an issue? So, Your Honor, we did object to the jury instructions. I want to be clear. You were asking about verdict form. On the jury instructions — Well, there was no pressure on both. Okay. So, again, having raised it on summary judgment at loss, we believe the law is clear that you don't have to raise it again. And in fact, the case I would cite, Your Honor, is Girdon by this Court in 2001, which says that once you lose an argument on summary judgment, if it's a legal issue, which it was a legal issue, that it is preserved and you don't have to raise it again in the case. So that's number one. Number two is that we did raise it anyway because we requested jury instructions to let us prove our case through direct evidence, through quick-look analysis, through other ways of presenting this issue without having to prove the relevant market. And that was turned down by the Court. But after — let's — let me — I just want to be sure that I'm clear on this point. After the summary judgment litigation, there was no point in time when you specifically objected to the — on the relevant market grounds. That's not correct, Your Honor. Okay. At the jury instructions, we propose an instruction to let us prove our case without a relevant market through direct evidence of anti-competitive effect. The Court rejected our instructions and we preserved that objection. So even though we lost it at summary judgment and did not have to raise it again, we did. We said, Your Honor, despite the summary judgment, we would like this instruction and the Court said no. So we raised it again. This was not a case where the Court did not know the issue, was not put on notice about it. It was absolutely presented in terms of that. And what the Court said in its waiver analysis, well, later on, says you didn't raise it a third time or a fourth time when it came up. And that simply is not what's required, we believe, under the law in order to preserve these issues. But did summary judgment address Section 2? Yes, Your Honor. Okay. So specifically, the summary judgment had to do with Section 1 and Section 2. And what Judge Kogan did, who wrote the summary judgment decision, he did an extensive analysis of the Section 1 issues. And then he had a footnote that said, all of my analysis for the Section 1 issues apply to Section 2, so I didn't face summary judgments on the same grounds. And we had presented in our briefing that we could prove through a variety of ways we said we could prove it through direct effects. We said for the Section 1, there were issues of per se and quick look analysis that also could be presented and that you could prove monopoly power through direct evidence, which the case law clearly indicates. So it was all presented and the judge did that. Also, very importantly, I'm sorry. I may have taken this statement from that summary judgment opinion out of context but my notes say that the judge in that ruling said, quote, the parties who did not sought relief with respect to plaintiff's additional accounts brought under Section 1. So, Your Honor, there were cross motions for summary judgments. Okay? And what Your Honor is referring to, we affirmatively sought summary judgment with respect to Section 1. The plaintiffs did. The defendants sought summary judgment with respect to all the accounts. Okay? And what the Court specifically did in the opinion is that rejected our arguments on Section 1 that you could prove without proving a relevant market and said we would have to prove relevant market, and then on its Section 2 analysis just had a footnote that said we are denying summary judgment for the same reason on Section 2 as Section 1 because the claims substantially overlap. And this is very important, Your Honor. The waiver issue doesn't apply at all to Carruth-Watt. May I ask you about that? Yes. So in connection with summary judgment, as I understand it, I'm looking at a page of the confidential appendix, but I think you know what I'm referring to. You pressed, as I think you mentioned, that the quick look test or the per se rule applies, right? We made that argument in support of either per se or quick look, yes. And I understand that Jacobs and I were on U.S. v. Apple, so we became familiar  You understand it very well, yes. with that. Yes. But then you said, and I hope you don't mind if I read you 1624, if the court does not hold that the per se rule or quick look test applies on this motion, NASL would proceed to prove a full rule of reason violation of trial with expert evidence addressing market definition and market power issues. Right. Market definition meaning really relevant market. Right. So, Your Honor, what we were indicating there is we were not moving for summary judgment under the full rule of reason. This was on our motion. We said that if you apply quick look or per se, we're entitled to summary judgment. We said if you do not apply quick look or per se, we will pursue rule of reason at trial if that's what we're left with. And you agree that then a relevant market analysis argument needs to be made? No, Your Honor, because that was not saying and we waive our right to prove through direct effects. And we have other parts of our briefing in which we specifically argued on summary. Where do you think, point me to the, your, the clearest statement you made in the course of district court proceedings that, with respect to a relevant market. With respect to being able to prove without relevant market? Yeah. Okay. So several times, okay, we clearly stated in our summary judgment motions that we could prove our, in our summary judgment per se a quick look. That was unequivocal, number one. Okay. Number two, in opposing the defendant's summary judgment motions, right, they moved on everything, including Section 2. We pointed out that not only were there relevant markets, for example, in Section 2, but we pointed out that we had direct evidence of anti-competitive effects, which eliminated the need for relevant markets. We presented that directly in opposition in our briefs. Then at the trial on the jury instructions, we specifically asked for an instruction to allow us to prove through direct evidence as an alternative to relevant market, and that was rejected. So all of that was done. Then, Your Honor, on the waiver point, this is important. I wanted to get this out. Because we lost count one on summary judgment, there could not be any plausible waiver, and they haven't even claimed one with respect to this issue for count one. Because count one never went to trial. Count one was never the subject of the directed verdict form. It was never the subject of jury instructions. It wasn't there. So there couldn't possibly be a waiver with respect to the count one claim, which we believe was improperly granted for summary judgment. So that's so this point has to be reached. Even if you found waiver in the others, which I suggest would not be proper. So if we were to disagree with you about that part that I read, which is in the context of a summary judgment, then if I were to view that as a form of waiver, and I appreciate it, Mr. Kessler, that you disagree with that, then the waiver analysis would apply. Even if Your Honor were to say that was a forfeiture, it can't possibly be a knowing relinquishment of a right the way the case law distinguishes between waiver and forfeiture. And if that was a forfeiture, then this is still plain error. And in particular, I want to call Your Honor's attention to the fact that on the conspiracy to monopolize count, which is count three, says there is not any case in the Second Circuit. In fact, it's very clear that relevant market is required for a conspiracy to monopolize. In fact, the only case they cited the other way, which is the Tenth Circuit case, specifically notes the Second Circuit has a different rule on conspiracy to monopolize. And the reason for that is conspiracy to monopolize only requires an agreement, a specific intent, and an overt act. You don't have to achieve the objective because it's a conspiracy statute. It goes back to the American tobacco case in the Supreme Court. So there's no plausible way, it's not plain error, to have required us to prove direct at to prove a relevant market on the conspiracy to monopolize. I just want to be, sorry if I'm taking your time belaboring this, but your basic position is that the back and forth in the context of a summary judgment motion was sufficient to preserve your position on relevance. And so I have four different grounds why there couldn't be a waiver in terms of that. And just to say one word about Cho. I know I'm over my line because Cho is a relevant thing. With respect to Cho, Cho, I believe, makes it very clear, because it was on a motion to the Supreme Court, it was on a motion to the Supreme Court, it was on a motion to dismiss, not at a trial and not at summary judgment. What it was saying is you must contextualize your claims under the plausibility standard with respect to a relevant market, which is not an issue here. Okay? The issue here is we clearly contextualized our claims. Our relevant market, for example, one of them was Division I teams for men's professional soccer. It was a very clear, plausible market. But then when you're at the trial stage, what the case law makes clear in Indiana Federation of Dentists is you can prove that through direct evidence of anticompetitive effects without a relevant market, because what the Supreme Court said in Indiana Federation, signing the Aretha Hovenkamp Treatise, which is very clear on this, that the whole purpose of relevant market is to draw an inference of anticompetitive effect through market power. But if you can come forward with real evidence of anticompetitive effect, you don't have to go through that step. So Cho, I mean, Cho, other cases, I think, tell us that we really should apply the rule of reason analysis. Is that fair, at least in Cho? Well, even applying rule of reason, under the rule of reason, the Indiana Federation of Dentists was a rule of reason case. And what they said in Indiana Federation of Dentists in the Supreme Court is that so let's say we're in Section I rule of reason. If it is a horizontal restraint, which is what we have here, says, and you have direct evidence of the anticompetitive effect, which we had here, because, for example, we had expert testimony that showed that the price of selling teams went up compared to what it would be in a competitive market that did an analysis, that's direct evidence of a price effect. Under Indiana Federation of Dentists, and I believe all the case law in this circuit, that is an alternative way. And Cho really doesn't question that. Cho is really a case saying on a motion to dismiss and a complaint, it's not sufficient to just say, well, you have an agreement and I'm going to be able to prove the anticompetitive effect. You have to have a plausible claim on a pleading stage. And the market was so undelineated in Cho that it's not surprising that that's why they came to that conclusion. Here, our market is clearly delineated, and the issue then becomes, can Indiana Federation of Dentists apply? And I don't think there's any real debate in the case law. In my opinion, the market is clearly delineated. I'm sorry? You said here the market is clearly delineated. It is, Your Honor. So that's irrelevant market. Well, no, because the reason that's different is that when Cho and the case law that it's citing talks about you have to contextualize a delineated market, that's a lower standard than meeting the test for defining a relevant market. That's exactly what Indiana Federation distinguishes between. It says that you don't have to meet the very formal test for defining a relevant market in a very specific way when you could directly prove anticompetitive effects. But you still have to delineate what it's referring to, right? It's too — it's really not the same thing. They use the word contextualize. They use the word, if you look in the case law, that, you know, it has to reference what part of the market it's referring to. It can't just be an abstract notion. But that is different from having to meet the test for defining a relevant market because or else Indiana Federation would have to be overturned to reach a different decision, and Second Circuit case law would have to be overturned. There are some cases, I think, where — and I don't mean to belabor this point but where it's so obviously clear what the market is that we don't really have to undertake the analysis. So maybe that explains. Well, Your Honor, I think what they mean is that you clearly can see what's being referred to. So, for example, in Indiana Federation of Dentists, they spoke about — That was extremely clear. Well, but it wasn't, Your Honor, in a defined market sense. And I'll explain. The argument was made there that you didn't know the precise geographic boundaries of that market. You knew it was dentists. You didn't know where exactly did you cut it off at this boundary or that boundary. And what the Supreme Court said is that we have direct evidence of anticompetitive effects. We do not have to precisely define the market here. So I believe, Your Honor, that even under a full rule of reason analysis, there is a not a quick look. Under a full rule of reason, what Indiana Federation delineates is that if you have direct evidence of anticompetitive effects, it says there is no need to precisely define the market. And also, remember, we're dealing with Section 2 cases here. And this Court has said in In Re Illumina Morehousing and in PepsiCo that for Section 2, this is the attempt to monopolize and the monopolization, that you can there prove there you're showing monopoly power and anticompetitive effect. You can do that through effects evidence without precisely proving the existence of a relevant market or monopoly power. And in conspiracy and monopolize, it's unequivocal. So at a minimum, Count 3 has to survive unless this Court is going to reverse its prior precedent. And again — Is that the first element, the possession of monopoly power in the relevant market? You're saying that there's an exception to that, where you don't have to prove it? Yes. If you — that's what PepsiCo talks about, is that if you could show direct exclusion of competitors or raising of prices, which what we show, that shows the monopoly power, and therefore, you don't have to go to the relevant market. And in conspiracy and monopolize, and again, I refer Your Honors to the — So I don't know that we've ever eliminated a showing of a relevant market, which is what I take it you're arguing. What we've said is that, as in Indiana, for example, the Indiana case, that it's a somewhat more relaxed showing. Yes. You don't have to meet the strict standards, which is what the verdict form required. When you look at the verdict form, which refers to the instructions, obviously, and you look at the instructions and the verdict form, the jury was required to find that we strictly met all the bounds of proving the precise parameters of the relevant markets we alleged. And if we didn't do that, and that is what's inconsistent with the case law — Thank you. I take it that the parties have divided their time. Who's going first? Samir Deghasan for U.S. Soccer. Okay. So it may please the Court. I'm going to focus on the Section 1 issues, and then Mr. Ruskin, who represents MLS, is going to focus on the monopolization counts. But I'm happy to answer questions on anything the Court may have. This appeal ultimately comes down to a single question. Was NASL required to prove a relevant market in order to sustain its antitrust claims? And the clear answer to that is yes. As the Supreme Court explained in Amex, courts, quote, cannot properly apply the rule of reason without an accurate definition of the relevant market because, quote, without a definition of the market, there is no way to measure the defendant's ability to lessen or destroy competition. And that's just what this Court held in Cho v. Brown weeks ago, where it, quote, rejected plaintiff's contention that their allegations of direct anticompetitive harm excuse them from pleading a relevant market. That is the exact same argument that is being proffered here, and it should be rejected for the same reason. And the Cho opinion directly engages with Indiana Federation of Dentists. That is a quick-look case. The Supreme Court in California Dental described Indiana Federation as a quick-look case, and this Court's precedent does, too. And as Cho explained, the right way to think about that is the relevant market was self-evident. There, quote, nearly 100 percent of the dental specialists in the Anderson area No question in that case about the relevant market, about what the relevant market  It was self-evident, as it always is in a quick-look case, because the whole point of a quick-look case is that the activity is so obviously anticompetitive. The Court has long experience with that kind of thing. There it was a naked restraint. So in that situation, yes, the market is self-evident. But here the market obviously was not self-evident. In fact, they pleaded one market, which was the consumer-facing market, about availability of games and the product was basically the soccer matches. And by the time they got to trial, they had a completely different market, the sanctioning market and the team membership market, where the product was the sanctions. You make an argument, I think in the context of Section 1, that this is actually a vertical restraint, not a horizontal restraint. Is that right? Have I misunderstood that? No, that's correct. Okay. What does that matter? I don't think it matters. I mean, I think that is an additional reason why we would prevail here, because but, you know, Cho itself was a horizontal restraint and applied the rule of reason. Alston was a horizontal restraint and applied the rule of reason. So I think it's very clear that you would apply the rule of reason here. In all of those cases, when you have the rule of reason, you require a relevant market at the threshold. I think the fact that it's a vertical restraint just makes it even more clear because in footnote 7 of Amex, the court specifically noted that vertical restraints, you know, in that context, this is what the quote from the court was, plaintiffs argue we need not define the relevant market in this case because they have offered direct evidence of adverse effects on competition. We disagree with respect to vertical restraints. They're different. And the way in which it described a horizontal restraint, because I know that plaintiffs here say this is a horizontal restraint, a horizontal restraint involves agreement between competitors. We seem to have said that in the prior case that Judge Jacobs mentioned. We seem to have described this as a horizontal restraint. No, because not an agreement between competitors. The alleged conspiracy here is an agreement between MLS and U.S. soccer to allegedly apply the standards in an anti-competitive way. And so there's no agreement here between competitors at the same level. In fact, the standards were adopted before any of these leagues even existed. It's a disinterested vote. There are only two leagues, sorry, only two members out of the 15 members on the board that are from the leagues, and they recuse themselves. So there is no sense in which any of this, either the adoption or the application of the standards, involves the leagues at all. So there's no horizontal agreement whatsoever. All this is is essentially the endorsement of a standard-setting organization. And it doesn't restrict competition in any way. There's no subsequent restriction. I mean, they rely on all of these cases like radiant burners and silver. These are group boycott cases where all of the industry and the radiant burner, the industry participants came together to not sell gas fees at radiant burner. And silver was a group boycott by members of the soccer exchange to deny a competitor essential wire and telephone services. This is nothing like that. What about relevant sports? Also, an attack on the standards, an issue there where we described it as horizontal restraint. Well, a few things. So one thing, I mean, relevant sports doesn't address any of, it doesn't address the per se issue. It's just about what qualifies as considered action for purposes of Section 1. But even if that were the case, if we're in rule of reason territory, you still need to define a relevant market. And so I don't think relevant sports really bears on this case at all. I take it that with respect to the waiver of forfeiture point, you think obviously that they lose on either ground. You've heard my recitation of something that appears in the Congressional Appendix, and you also heard Mr. Castorio's friend's response to that. What is your best case for waiver? In connection with the summary judgment. Well, yes. I'll explain because I think there's a lot of mischaracterizations that we heard about how things stood with respect to waiver. So let me just sort of walk you through it. So I think you're absolutely right, Judge Lo here, that they at CA 1624, they basically say that they would need to prove a relevant market. Then they point to one, you know, line in the district court opinion summary judgment that basically just parrots what they say. And the district court doesn't do any analysis of this. The district court believes this is basically an uncontested point. They never again say at any point, oh, we're boxed in by summary judgment. You know, we want to preserve this objection. That's something that they mention for the first time in their reply brief in their post-trial briefing. You know, so it's obviously a post-talk explanation that they've kind of cooked up at that point. But then what happens is on December 6th, the initial jury instruction and verdict form that they propose, so they jointly propose, has the requirement for a relevant market. They propose that. Then two weeks later on December 20th, the pretrial conference, and this is what Judge Gonzales, in his opinion, walks through. And he was there. This is an abuse of discretion standard. He knows what was represented to him. And he says that. He was repeatedly told that they — that the jury would have to find a relevant market. And this is a quote from NASL's attorney. They have to find at least one relevant market. They have to find the violation of at least one of these relevant markets. And with respect to Section 1. And with respect to Section 2, they never say anything. I mean, that's with respect to both. So is that with respect to Section 1 or 2? That's with respect to both. And, in fact, they never suggest anything about Section 2, even, you know, during this — with any distinction during this trial. Then — and so then — so now it — then the district court circuit proposed jury instruction on January 6th. And it's only on January 13th. So we're talking almost six weeks after they proposed the jury instruction's relevant market. So they come back and start to say, oh, actually, we want a different jury instruction. And the district court, in its discretion, absolutely, at that point, said, this is far too late. We're on the eve of trial. You had weeks to do this. You proposed your own instruction. And said, this is too late to do it. And now, after all of that, they're going to come and say, oh, the jury instruction that we proposed was the big problem here. And as a result, we're going to unwind this trial that took weeks and weeks. And the first time — and the reason is we're boxed in at summary judgment. We never told you we're boxed in at summary judgment. In fact, the fact that we tried to make this argument during the jury instructions suggests they didn't think they were boxed in at summary judgment. And then, you know, they make that argument the first time in their post-trial briefing reply. So I think this is a classic — that, look, we lost. We objected. We made our point at summary judgment with respect to the requirement that we prove a relevant market, that we wanted the per se or quick look analysis. We lost that. That didn't mean that that was then not preserved. That was preserved effectively for the duration of the proceeding. What's your response to that? I don't think — I think I got that right. Yeah. I don't think they make that argument. Clearly, in fact, I think they made — as you described, Judge LaHood, they made the opposite point. And then I think one other thing to note about the summary judgment opinion that made clear that they really had to keep preserving it. I mean, even if they said it at summary judgment, obviously they can relinquish it later on by submitting a jury instruction and effectively inviting the error here, which is, I think, what they did. And here's another example, which is at SA35. This is something that the district court says when talking about the null testimony. It said, Defendants seek to prevent null from testifying that a plaintiff need not define a relevant market if there is direct evidence of anti-competitive effects. I agree this is a legal conclusion regarding NASL's burden under the rule of reason, and accordingly null will not be permitted to testify to this conclusion. This is the key sentence. The parties will argue at the charge conference whether the jury should be so instructed. So that clearly is contemplated. The charge conference is going to be an argument that you don't need to prove a relevant market. You could just prove it through direct anti-competitive effects. So they have that opinion in front of them. They never say anything about being boxed in. That contradicts the idea that they were boxed in. I absolutely believe that they made this, they tried to make this argument at the charge conference. Judge Gonzalez would have heard it. But instead what they did is proposed jury instructions that invited the error they're now claiming, and then at the 11th hour or past the 11th hour tried to change their position, and then only in their reply after trial say, oh, the big problem here is. Sorry, Your Honor. Remind me of what the district court judge said in adjudicating the summary judgment motion about relevant market. It was a single line. I'm not sure if I can. It was a single line. I think it might just be this line. To state a claim under Section 1 of plaintiff must allege a plausible relevant market in which competition must be harmed. So it was just sort of stating a background, you know, a background point of law that the parties weren't even contesting. It wasn't some long analysis at all. In your view, there was no discussion beyond that line. No, there is no discussion in the summary judgment beyond that single line. And then with Section 2, what they point to is they just say it rise and falls with Section 1. So there's no sustained analysis on this at all. Where was that? What was that line? That's at SP 52. 52? Yeah. SP 52. This is it. It's on SP 52. If you look about halfway down the page after the subheading for market definition, it's this line. To state a claim under Section 1, a plaintiff must allege a plausible relevant market in which competition must be harmed. Not even a citation after that, because it's so obvious, because it's something that plaintiffs themselves have said in their briefs. So there's not some sustained big argument that everyone was disputing. Thank you, Your Honor. Thank you, Your Honor. Mr. Ruskin. Good morning, Your Honors. May it please the Court, Brad Ruskin of Proscara Counsel for Appellee Major Lee Socker. As my co-counsel stated, I will focus on NASL's Section 2 claims, and I would like to address two or perhaps three primary points. First, it is fundamental to every Section 2 claim that a defendant must have monopolized, attempted to monopolize, or conspired to monopolize something, and that something is a relevant market. The concept of monopoly is meaningless outside the context of a market. Put differently, the answer to the question, what has defendant unlawfully acted to monopolize, has to be a relevant market. That is fundamental and the foundation of Section 2 claims. Second, NASL cannot circumvent that requirement by invoking so-called direct evidence, not as a matter of law and not as found by Judge Gonzalez on the facts of this case. And three, I'll make one additional point, if I may, on waiver. Consistent with these principles, NASL does not cite a single Section 2 case, not one, in which this Court has reversed the district court for including a relevant market inquiry in a verdict form or in its jury instructions. Consistent with these principles — Breyer, that's the easy case. The hard case would be if the relevant market analysis were not part of the record, then could you sustain a Section 2 claim? That's a good question. And we have a number of cases that I'll point to that go exactly there. But it is notable that never has it been deemed improper to have included a relevant market inquiry in a verdict form or in jury instructions. And consistent with these principles, the Supreme Court and this Court have made clear that a plaintiff must define and prove a relevant market for all Section 2 claims. Since — that starts with Spectrum Sports, 1993 decision of this Court. The question is, when do you require — what should we require a strict showing of a relevant market? Right? Or when can that requirement be substantially relaxed? You know, in the context of Section 2 cases, monopolization, the answer is that a Again, without the context and proof of a relevant market, a monopoly or attempted monopoly or conspiracy to monopolize has no meaning. If we look at the Supreme Court's decision in Spectrum Sports — Isn't it sort of obvious here what the relevant market is? But maybe I'm mistaken. Not just is it not obvious. It expressed plaintiffs had a view of the relevant market. As co-counsel said, they had an initial view of relevant market. They then switched — excuse me. They switched their definition of market that they sought to prove, and the jury rejected it. And, of course, the factual evidence in this case is powerful in showing why you need a relevant market and why their claim was so weak. It is true that the jury rejected the definition of the relevant market. And if you look at the facts of this case, I think it highlights why it's so important to have a relevant market. Their definition of relevant market that they propounded to the jury was a team membership market, a notion — it was tailor-made so that the only party in that market would be Major League Soccer. That was the market they sought to define. And that Major League Soccer, they defined it as Division I — a Division I club in the United States. The evidence — And Division II? No, just — There was two separate markets, to be more precise. So they said there was a Division I market for team membership, and then they said there was a Division II market for membership. And they also had other markets with respect to sanctions that didn't apply directly to the Section II claims. With respect to the evidence in the case, what it showed was that investors and parties who were looking to invest in clubs look across divisions, look across leagues, look across boundaries, invest internationally, and invest in other domestic sports. That testimony came not just from defendants that are our experts. That testimony came out of the mouths of plaintiffs and its witnesses as well. It was true with respect to MLS in particular, where investors looked at MLS clubs. It was true with respect to other sports. And it was true with respect to the principal in an ASL, Mr. Camiso. Mr. Camiso had looked at a variety of foreign soccer clubs for a period of time. He had an interest in investing in MLS. He then invested in NASL, a Division II team in the United States. After NASL went out of business, he invested in Fiorentina, a Division I team in Italy. So these are all of the options that are there. These are the reasons that the plaintiff didn't show any evidence here and couldn't establish its relevant market. They're also the reasons that what they purport to show as a price increase and say that's direct evidence, that isn't direct evidence of anything. One must show, in order to show direct evidence, that it is direct evidence of price control of monopoly power, of direct evidence of control of prices or exclusion of competitors across the marketplace. And increases in prices can happen for all sorts of reasons. So your position, I think, you may not have to go this far, but is that in every Section II case, a relevant market is going to have to be shown for a conspiracy to monopolize, for example? My position, and happily, Your Honor, the position of this circuit as well. Three times the Second Circuit has dealt with the issue of conspiracy to monopolize. And in those three times, they've held that, in fact, you must show a relevant market. First, in the Toshiba case, the Court was expressed on exactly that point. In Toshiba, citing Spectrum Sports, and importantly, Spectrum Sports, I was referring to it before, the Supreme Court made clear that you had to extend and prove relevant market. There it dealt with attempted monopolization. And it said that's core principle to a monopolization, attempted monopolization case. You must show relevant market. In Toshiba — We don't always have that requirement. Yes. And in Toshiba, the Court cited Spectrum Sports and then explained, and I'm quoting, intent alone is not sufficient, however. The defendant's power in a relevant market must be established to establish whether it is a monopolist or threatening to be one. The Court then, when this Court, and it seems this comes up every 10 years, as it turns out, in 2000, 1997 was Toshiba, approximately 10 years. 2008, in Chapman, the Court dismissed for failure to show a relevant market in a conspiracy case.  And in 2000 — Thank you very much. I think we've got your argument. Thank you, Your Honor. Mr. Kessler. Your Honor, I want to start by giving you some citations. In the record —  Before you do that. Okay. So your friend on the other side, in connection with Section 1 argument, referred to Special Appendix, Page 52, to state the claim that Section 1 plaintiff must allege a plausible relevant market to which competition — in which competition must be harmed. Without citation, and as he said, it's almost as if it's a totally uncontroversial proposition. And this is Judge Kogan's decision, I take it, right? Yes. It seems to be totally uncontroversial in Section 1 case. With all due respect, Your Honor, that's not correct on the issue here. On a motion to dismiss, you have to have a plausible claim and have a relevant market. But what Indiana Federation said — and it was a rule of reason case. How do I know it was a rule of reason case? Because Amex, the Supreme Court's case in Amex, specifically — and I'll give you the number — in 585 U.S. 543, note 7, it specifically described Federation of Dentists as being a horizontal restraint case under the rule of reason — so it was a rule of reason — which direct evidence of competitive effects suffice without requiring an accurate definition of the relevant market. That is the Supreme Court in Amex interpreting Indiana Federation of Dentists. And if you read Indiana Federation of Dentists, which cites the Aretha Hovenkamp treatise, the treatise which they are citing favorably specifically says it is not necessary in a rule of reason case to prove a relevant market definition precisely when you have direct evidence of anti-competitive effects. Can I ask you the following, sir? Yes. I'm reading from Amex. Yes. The plaintiffs rely exclusively on direct evidence to prove that Amex's anti-steering provisions have caused anti-competitive effects in the credit card market. To assess this evidence, we must first define the relevant market. Okay. So — So how — Because Amex was a — Amex was a vertical case. Okay. And they — But you saw — I thought maybe it was someone else told me that it doesn't really matter what it is. It matters. That was inaccurate. Because what the Supreme Court said in Amex is it limited Indiana Federation of Dentists to a horizontal case. And that's what they were doing, saying, yes, it's true. You don't need a defined relevant market if you have direct evidence here. But here we're in a vertical case. That's what Amex said. And we know we're horizontal here because of relevant sports. Let me give you — so that — because of relevant sports. So I'm going to give you one more minute. Yes, please. One more minute. Citation. Okay. C.A. 1553, we have an extensive argument in the summary judgment called, the record evidence directly shows anti-competitive harm with no need for proof of relevant markets or market power. Okay. And that was directly our brief, not assuming it was there, making all of these arguments on this summary judgment. So I think that's an important citation. I also want to give you this — I don't understand. How did the district court's resolution of that give you any assurances that the — that your opposite number read to me? That, you know, that was anything — if there was anything in that opinion that gave you assurances that you didn't have to prove relevant market going forward? Well, he ruled directly that you had to prove — You lost the summary judgment. In the summary judgment — Issues of fact. In the summary judgment, he rejected my — Issues of fact in the summary judgment. That's why you used the lose summary judgment. But this, Your Honor, was a legal issue. So the summary judgment has fact issues and legal issues. I didn't lose the summary judgment. I lost my affirmative summary judgment. I defeated their summary judgment because there was a trial. That's why it's a trial. But what the case law says, and I cited the Second Circuit, that when a legal issue was lost in summary judgment, you don't have to raise it again. And that's why I gave this citation, because the legal issue we raised is we don't have to prove relevant market, and the Court ruled we did. But this is another important citation. A7A3-93 is where in the jury instructions we asked not to have to prove relevant market with direct effects. And what happened is that — that was before the charging conference. That was early on. And it's true, at the charging conference, we didn't argue it again. But frankly, Judge Gonzales lectured me, do not raise issues again on these jury instructions. If I've already seen them and I have done that, you've done what you have to do. I don't think you have to argue that there's a duty for lawyers to beat their head against the wall. Okay. Thank you. Thank you. Thank you, Your Honor. And then the last point, I know I'm out of time. Last point. Please look at the conspiracy to monopolize claim. Counsel does not have a single case to change the law of this circuit, which is Volvo. We cited the Volvo case. And then there's a district court case that is directly on point, which is called ISH dialysis, and that it is clear for conspiracy to monopolize, there is no relevant market requirement. That's it for me, Your Honor, unless you have a question.  Famous ISH dialysis case. Thank you. So we will reserve the decision.